# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA BROWN ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 02597 |
| v. ) | |
| ) | |
| CHICAGO MUNICIPAL ) | Judge John J. Tharp, Jr. |
| EMPLOYEES CREDIT UNION; CITY ) | |
| OF CHICAGO; MUNICIPAL ) | |
| EMPLOYEE'S ANNUITY BENEFIT ) | |
| FUND OF CHICAGO | |
| | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Brown, a former City of Chicago employee, alleges that (1) the City of Chicago and the Chicago Municipal Employees Credit Union ("the Credit Union") improperly deducted money from her paychecks to pay off certain loans, (2) the City of Chicago retaliated against her for reporting certain grievances to the United States Attorney's Office, and (3) the Municipal Employee's Annuity Benefit Fund of Chicago ("the Fund") and the Credit Union improperly deprived Brown of a portion of her pension. Brown makes these allegations as part of an amended complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The defendants have each moved to dismiss Brown's amended complaint in its entirety. For the reasons stated below, the motions to dismiss brought by the Credit Union and the City of Chicago are granted. The motion to dismiss brought by the Fund is denied, and the Board of Trustees of the Fund is added by the Court as a defendant in lieu of the Fund.

I.  **BACKGROUND**[1]

Brown alleges that she began working under contract for the City of Chicago in 1999. Am. Compl. (Dkt. 25) at 7. After two years, Brown became formally employed by the city's Department of Transportation and began to make contributions toward her pension. *Id.* Brown continued to work for the city until 2009. *Id.* In 2003, she took out a signature loan of $2,500 and, in 2004, an auto loan of $10,273.35 from the Credit Union. *Id.* at 5, 9. To pay off the loans, deductions were made from Brown's paycheck. *Id.* Brown alleges that the City improperly continued to allow deductions from her paycheck (totaling $6,000) long after the $2,500 signature loan was paid off and secondarily, that the City refused to stop authorizing—and the Credit Union refused to stop accepting—the deductions after Brown complained about the problem. *Id.* at 5, 9. After the deductions "finally stopped" in October 2005, Brown made eighteen direct payments to the Credit Union toward paying off the auto loan. *Id.* at 6. In May 2007, she started payroll deductions once again to continue to pay off the auto loan. *Id.* at 9. In May 2008, Brown asked the City Finance Department and the Credit Union for a history of her payroll deductions and payments, respectively. *Id.* at 6-7.

In 2009, Brown was laid off from the city. *Id.* at 7. As a result, only one more half payment was made on the auto loan. *Id.* Brown believes that she was laid off because at some point she sent a report to the United States Attorney's Office for the Northern District of Illinois listing her grievances regarding the payroll deductions. *Id.* at 11. She also believes that she was the only employee laid off from her department and that she and other employees were told that

---

[1] For the purposes of the three pending motions to dismiss, the Court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in her favor. *See Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

there would be no layoffs from their department. *Id.* The same year, the Credit Union charged the auto loan as a bad debt to Brown's credit. *Id.* at 7.

In 2012, Brown formally resigned from city employment and sought to collect her pension from the Fund. *Id.* at 7. She alleges that she expected to receive a lump-sum payment of $20,344.91, but instead she received $12,986.85. *Id.* at 8.[2] She adds that the Fund improperly gave a portion of her pension to the Credit Union and (a) did not allow her to prove that she did not owe money to the Credit Union; (b) refused to tell her the amount of money in her pension fund; (c) did not inform her that she had a "lien" on her pension; and (d) did not "allow me to take this matter up with their Board of Trustee[]s." *Id.* at 8; Pl.'s Resp. (Dkt. 57) at 9.

In sum, Brown alleges that "[t]hese three departments [the City, the Credit Union, and the Fund] are still stealing from me … [they] are city related departments that seem to be acting together to steal money from me." *Id.* at 10. Brown brought her complaint under 42 U.S.C. § 1983.

## II. DISCUSSION

Brown's claims against the City of Chicago and the Credit Union must be dismissed because they are time-barred.[3] Brown's claims against the Fund are not dismissed, but the Court substitutes the Board of Trustees of the Fund as the defendant in lieu of the Fund itself.

### A. Brown's § 1983 Claims against the City of Chicago and the Credit Union are Time-Barred.

---

[2] Brown adds that she requested a statement of the amount of her pension in June 2010 and that the letter she received from the Fund showed $18,399.54 in her account. Pl.'s Resp. (Dkt. 57) at 12-13.

[3] The City and Credit Union raise other arguments for dismissal, but the Court has not addressed them because the plaintiff's claims are so clearly time-barred.

While a statute of limitations defense is not normally part of a Rule 12(b)(6) motion, when the plaintiff's allegations reveal that her claim is barred by a relevant statute of limitations, the complaint may be dismissed for failure to state a claim. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citations omitted). Section 1983 provides a federal cause of action, but courts look to the laws of the state in which an injury occurred to determine the length of the statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). Illinois has a two-year statute of limitations for personal injury claims. 735 ILCS 5/13-202. Consequently, § 1983 claims arising in Illinois must be brought within two years of accrual. *Kelly*, 4 F.3d at 511. A § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (quoting *Kelly*, 4 F.3d at 511).

Brown alleges that payroll deductions began in 2003 and ended in 2009, with a break between 2005 and 2007. Am. Compl. at 5. She believes that the City of Chicago "deducted money from my payroll checks from 2003 to 2009 for a signature loan [] and [an] auto loan" and that the Credit Union wrongfully "[accepted] the overpayments [] from the City." *Id.* She began to complain about the payroll deductions before October 2005—she wrote in her complaint: "I had to call City Finance Department for more than a year about that loan … At the same time I was also calling the Credit Union, but they refuse[d] to stop [accepting] the overpayments [] from [t]he City. So I called the Inspector General Office … This occurred in October in 2005." *Id.* at 5.

Brown filed her first complaint on April 5, 2013. Substantially more than two years passed between the time Brown knew of a potential injury and when she filed her complaint. *Hileman*, 367 F.3d at 696. Even if she could argue that she didn't know of her potential injury

4

until 2009, when the payroll deductions ended, more than two years have passed between that time and 2013, when she filed her first complaint. Brown's argument that her claim is timely because her injuries have continued is misplaced. The "date the consequences of [a] violation became painful … [is] not the date of accrual" of an alleged § 1983 claim. *Kelly*, 4 F.3d at 512 (citation omitted). The "date of the alleged constitutional violation … [is] the date of accrual." *Id.*

As to Brown's allegation that she was laid off from the City in retaliation for filing a report of her grievances with the United States Attorney's Office, Brown was laid off in 2009, again more than two years before she filed her complaint.

Brown has alleged, cursorily, that a conspiracy existed between the City, the Credit Union, and the Fund; in theory, if the City and Credit Union were conspiring with the Fund in 2012 when the Fund allegedly misdirected a portion of the plaintiff's pension benefit to the Credit Union, then that claim might not be time-barred. However, Brown's complaint utterly fails to satisfy the pleading requirements of a conspiracy cause of action. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) ("we need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements … The [f]actual allegations must be enough to raise a right to relief above the speculative level.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The only allegation of concerted action—Brown's statement that the three defendants "are city related departments that seem to be acting together to steal money from me"—is unsupported by any facts—indeed, the Court can take judicial notice of the fact that the City, the Fund, and the Credit Union are independent legal entities. The Fund is a distinct legal entity created by Illinois law. *See, e.g. Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 860-61 (7th Cir. 1996);

5

40 ILCS 5/8-101. Similarly, the Credit Union is a private financial institution chartered by the state of Illinois and insured by the federal government (the National Credit Union Administration, or "NCUA"), not the City.[4] Thus, the underlying premise of the plaintiff's conspiracy claim is not only inadequately pled, it is demonstrably wrong. And in any event, even if there were some affiliation between these entities, that fact alone would fall far short of establishing that there was a conspiracy between them to injure the plaintiff. The plaintiff's conspiracy allegations do not rise "above the speculative level," *Twombly*, 550 U.S. at 555, and must be dismissed.

Brown's § 1983 claims against the City and the Credit Union are therefore dismissed as time-barred.

### B. Brown's Claims against the Fund Are Not Dismissed but the Court Substitutes the Board of Trustees as a Defendant.

The Fund seeks to dismiss Brown's amended complaint for four reasons: (1) Brown failed to demonstrate that she exhausted her administrative remedies; (2) the Court lacks jurisdiction because Brown brings a § 1983 claim against the Fund; (3) Brown failed to state a claim for conspiracy; and (4) Brown signed an agreement with the Credit Union in 2003 which gave the Credit Union a security interest in Brown's pension fund. The Court has already rejected the conspiracy claim, above. The Fund's "jurisdictional" claim must be addressed first and the Court then turns to the question of exhaustion and Brown's purported agreement with the Credit Union.

#### 1. Jurisdiction for § 1983 claim against the Fund

---

[4] *See* NCUA CMECU Profile Report, *available at* http://researchcu.ncua.gov/Views/FindCreditUnions.aspx, search for "Chicago Municipal" to be directed to Profile Report (last visited April 10, 2014).

The Fund argues that the Court lacks jurisdiction over Brown's § 1983 claim because the Fund is not a "person" and is therefore not subject to § 1983.[5] That is debatable—"funds" sue and are sued all the time, and as the City points out in its brief, it has itself sued the Fund—but irrelevant. If the *pro se* plaintiff has named the wrong defendant, the Court is authorized by Federal Rule of Civil Procedure 21 to cure the problem. Under Rule 21, this Court may add or drop a party at any time: "On motion or on its own, the court may at any time, on just terms, add or drop a party." *See also Bavido v. Apfel*, 215 F.3d 743, 747 n.3 (7th Cir. 2000).

As the Fund points out, it is the Board of Trustees of the Fund ("Board") that is vested with the power and authority under Illinois law to administer the Fund. The Board is a local government unit, created by statute. It consists of five members, including the city comptroller, the city treasurer, and three elected members. 40 ILCS 5/8-192. The mayor is responsible for arranging and holding an election for the elected board members and for filling vacancies. *Id.* at 5/8-192, 5/8-194. All five members are required to take an oath of office "to be administered by the city clerk." *Id.* at 5/8-193. The Board is specifically vested with the responsibility of (i) notifying the city comptroller and the Board of Education of the deductions to be made from the salaries of employees, and (ii) authorizing or suspending the payment of any annuity or benefit from the Fund. *Id.* at 5/8-199 and 5/8-203. Since the relevant provisions of the Illinois Pension Code make clear that the Board is a local government unit, an aggrieved plaintiff such as Brown can bring a § 1983 claim against the Board.

---

[5] The Fund argues that it is not a "person" within the meaning of § 1983 because it is simply a "statutorily created pool of money," not because it is not municipal or local in character. Municipalities and other local government units are included among the "persons" to whom § 1983 applies. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

So, the Fund is not the proper defendant; the Board is. The *pro se* plaintiff named the wrong defendant, but that does not mean that the Court lacks jurisdiction over the claim; it simply means that the proper defendant should be substituted for the Fund pursuant to Rule 21. Accordingly, the Court drops the Fund as a defendant in this case and adds the Board.[6] And since the Fund—a pool of money—could not have been directing its defense in this case, the Court is on solid ground inferring that it was the Board (or its agents) that has (or have) been directing the course of this litigation for the Fund. There is, therefore, no need to extend a further opportunity to the "new" defendant to respond to the plaintiff's amended complaint. The Fund's submission will stand for the Board's.

## 2. Exhaustion

The Board argues that Brown failed to exhaust her administrative remedies under the Illinois Pension Code before bringing this suit in federal court. The Board cites 40 ILCS 5/8-203, which states that the Board of Trustees of the Fund "shall have exclusive original jurisdiction in all matters relating to the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." The Board's decisions are then subject to review under state administrative review procedures. *See* 40 ILCS 5/8-252.

It is true that litigants must exhaust any administrative remedies provided by the Board before seeking judicial relief with respect to pension-related claims. But Brown's claim is that the Board provided her no administrative remedies because they would not permit her to pursue

---

[6] To be clear, the Court is not adding as defendants the individual members of the Board, but rather the Board as an entity. Theoretically, the Board's individual members would have absolute immunity from suit, although in this case, the Board's members have not yet "act[ed] in a judicial capacity." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) ("Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions.").

her claim. It is apparent from Brown's amended complaint and her response brief that there is a factual dispute as to whether Brown *could* have pursued her claim before the Board, or whether instead she was prevented from pursuing any claims by the Board's own action or inaction. In her amended complaint, Brown stated that the Fund "did not allow me to show them the proof that I did not owe money to the Credit Union. They also refused to tell me the amount in my retirement fund" and that the Fund "gave away a portion of my pension." Am. Compl. at 8, 11. In her response brief, Brown states:

> I went to [the Fund] office three times after I requested my retirement funds. [One employee] refuse[d] to talk with me about the amount in my retirement fund … [Another employee] refused to talk with me about my retirement funds. She said to me 'you owe the Credit Union' … It was improper for [the Fund] not to inform me of the amount in my pension fund. It was improper for [the Fund] not to inform me that I had a lien on my pension. It was improper for [the Fund] to take a portion of my pension without me being able to show the proof that I did not still owe money to the Credit Union. It was improper for [the Fund] not to allow me to take this matter up with their Board of Trustee[]s … [T]he Board of Trustee[]s should have sent a letter of notification about the amount … and notice of a lien … before [my] refund was release[d] … [I] should have [the] right to sit down with the Board of Trustee[]s … There is nowhere in that [contribution amount] letter that stated [that] your pension contributions will be turned over to the Board of Trustees [and] [the] require[ment] [that] your contribution should be addressed to the Board.

Pl.'s Opp. (Dkt. 57) at 9-10, 12. Distilled, Brown asserts that the lack of information about how to pursue her claims in tandem with the Fund's refusal to provide Brown with information specific to her pension led to her inability to pursue her claim before the Board.

The Board's response does nothing to show this claim to be implausible. The Board argues that "a plaintiff cannot proceed directly to the courts without first exhausting a statutorily mandated administrative review procedure," Br. at 7, but fails to identify such a procedure. The act creating the Fund and the statutes that govern it do not provide such a procedure and, so far

9

as the Board's brief suggests, neither does the Fund. The Board asserts that the plaintiff was required "to first file an administrative review complaint before the Board of Trustees of the Fund," citing 40 ILCS 5/8-203, but that provision merely vests the Board with "exclusive original jurisdiction" over all matters relating to the Fund; it does not provide any administrative procedures that claimants must follow to contest a decision by the Board. Nor does the Fund's website, or member handbook (available on the website), set forth any such procedures. And while it is true that pursuant to § 5/8-252, the procedures of the Illinois Administrative Review Law govern "all proceedings for the judicial review of final administrative decisions" of the Board, both sides agree that there has been no such decision here, either because, as the plaintiff submits, the Board has deprived her of any ability to pursue an administrative remedy, or, as the Board maintains, because the plaintiff has failed to use the available administrative remedies provided by the Board.[7]

The Board's seeming inability to identify the procedures that the plaintiff was supposed to exhaust highlights the fact dispute between the parties regarding the availability of administrative review by the Board. And given that dispute, Brown's claim cannot be dismissed for failure to exhaust administrative remedies; if administrative remedies were not made available to Brown, she cannot be held accountable for the failure to pursue those remedies at this juncture. *See, e.g., Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005) (in the ERISA context, a plaintiff need only exhaust *available* remedies, and is excused "if there is a lack of meaningful access to review procedures") (citation omitted); *Bd. of Trustees of Addison*

---

[7] The Board misquotes § 5/8-252 in its brief, omitting the reference that explains that the Administrative Review Law is applicable only to "final administrative decisions" by the Board. Br. at 7. Whether intentional or careless, this error should not have occurred; the Court would expect the Board to be able to accurately quote, and describe, the statutes that govern its responsibilities and operations.

*Fire Prot. Dist. No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 884 (2d Dist. 1993) (holding that "to compel plaintiff to seek relief from defendant [pension fund] in the face of defendant's demonstrated position would be patently futile and would delay the administration of justice").

Based on the Court's liberal reading, as required of pro se complaints, *see McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010), Brown has alleged that she was deprived of property—her pension—without due process of law—notice and a hearing—and that the Fund caused this deprivation. *See, e.g., Peacock v. Board of Trustees of Police Pension Fund*, 395 Ill. App. 3d 644, 654-55 (1st Dist. 2009) (holding that due process was violated where plaintiff received no prior notice and no meaningful opportunity to be heard before pension board terminated benefits); *Kosakowski v. Bd. of Trustees of City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 387 (1st Dist. 2009) ("As a matter of due process, the Board should have provided the plaintiff with notice and an opportunity to be heard before modifying his pension."). Brown has stated a sufficiently plausible claim for relief to survive the Board's motion to dismiss on this ground.

### 3. Remedy

The Board also argues that one document—a "Security Agreement and Power of Attorney"—was signed by Brown and shows that Brown consented to "grant[] the Credit Union a security interest in and to all of [her] right, title and interest in and to any refund which may become payable from [her] pension funds…." Br. at 3; Ex. A. In other words, the Board argues, the agreement shows that Brown agreed to let the Credit Union take money from Brown's pension fund in order to pay off any outstanding debts at the time of her separation from service as a municipal employee. *Id.* at 6. The Board's point is that it was simply "honor[ing] the Credit Union's lien when it refunded [Brown's] contributions in 2012." *Id.* at 3. Brown contests the

legitimacy of this document and suggests that she did not sign the agreement attached to the Board's Brief, but that instead her signature was forged. Resp. (Dkt. 57) at 11 ("It is a document I have never seen and appear[s] to me to be forged.").

The Court must accept Brown's allegations as true and Brown is permitted to make allegations in her response brief that are consistent with her complaint. *See Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013) (must accept allegations as true); *Smith v. Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998) ("A plaintiff … can oppose the motion [to dismiss] … with any factual allegations that are consistent with the allegations of the complaint"). The question of whether Brown signed the agreement is in dispute and cannot be resolved on a motion to dismiss.

\*      \*      \*

For the reasons set forth above, the City of Chicago's Motion to Dismiss [29] and the Credit Union's Motion to Dismiss [32] are granted. The Board of Trustees of the Municipal Employee's Annuity Benefit Fund of Chicago is added as a named defendant pursuant to Fed. R. Civ. P. 21 in lieu of the Municipal Employee's Annuity Benefit Fund of Chicago. The Board's Motion to Dismiss [50] is denied to the extent Brown is asserting a procedural due process claim against the Board.

Entered: April 16, 2014

John J. Tharp, Jr.
United States District Judge