# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 02597 |
| ) | |
| THE BOARD OF TRUSTEES OF THE ) | Judge John J. Tharp, Jr. |
| MUNICIPAL EMPLOYEES' ) | |
| ANNUITY & BENEFIT FUND OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Brown, a former City of Chicago employee, files this action against the Board of Trustees of the Chicago Municipal Employees' Annuity & Benefit Fund of Chicago ("the Board") pursuant to 42 U.S.C. § 1983, alleging that: (1) the Board violated her due process rights under the Fourteenth Amendment by wrongfully withholding a portion of her pension and transferring those funds to the Chicago Municipal Credit Union ("the Credit Union") when she requested a refund of her pension contributions; and (2) the Board engaged in a conspiracy with the Credit Union to intentionally defraud her of her pension fund. Now before the Court is the Board's motion for summary judgment. For the reasons set forth below, the Board's motion is granted.

# BACKGROUND[1]

Brown began working under contract for the Chicago City Council in 1999. DSOF ¶ 1, Dkt. 64; Sec. Am. Compl. at 7, Dkt. 25.[2] After two years, Brown became formally employed with the City's Department of Transportation and began making regular contributions toward her pension. *Id.* ¶ 1. While employed by the City, Brown took out two loans from the Credit Union. *Id.* ¶ 2. In 2003, Brown took out a signature loan for $2,500 and, in 2004, an auto loan for $10,273.35. *Id.* To secure the loans, Brown executed a Security Agreement and Power of Attorney on May 27, 2003.[3] *Id.* ¶ 3 (the "Agreement). Although Brown asserts in her response to the motion for summary judgment that she had not seen the Agreement before the motion to dismiss, Resp. at 4, Dkt. 68, a notary public witnessed Brown's signature and the name "Angela M. Brown and Account No. 53636" are listed in the heading. DSOF ¶ 3. The Security Agreement granted the Credit Union a security interest "in and to all of [her] right, title, and interest in and to any refund which may become payable from [her] pension funds at [the Board] as a result of [her] separation from the City of Chicago." *Id.* The Power of Attorney allowed the Credit Union to act in Brown's place to receive, collect, endorse for payment, and cash any check relating to any refund due her in accordance with the provisions of the Pension Fund. *Id.*

---

[1] The Court takes the following facts from the Board's Statement of Facts ("DSOF") (Dkt. 64). Brown failed to respond to the Board's Statement of Facts and failed to file her own Statement of Facts, in violation of Local Rule 56.1(b). As such, all factual allegations in the DSOF are taken as true for the purposes of summary judgment. *See Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006) (Non-movant's "failure to respond [ ] results in deeming admitted the uncontroverted statements in [the moving party's] Local Rule 56.1(a) submission.").

[2] Because Brown did not submit a LR 56.1 Statement of Facts and because this Court is granting summary judgment for the Board, the Court will note additional facts pled in Brown's Second Amended Complaint to provide a more fulsome factual background.

[3] The Security Agreement covered future and existing indebtedness to the Credit Union.

To pay off the loans, the City made deductions from Brown's paycheck and sent the funds electronically to the Credit Union. *Id.* ¶ 4. Brown states that the City continued to deduct money from her paycheck after she completed paying off the signature loan. Sec. Am. Compl. at 5, 9. Although Brown does not provide evidence of when she completed paying off the loan, she states that the City continued to allow deductions from her paycheck—totaling over $6,000—after she completed repayment of the signature loan. *Id.* Brown eventually stopped the payroll deductions in October 2005. *Id.* ¶ 5. Afterward, Brown made 18 direct payments to the Credit Union toward paying off the auto loan. *Id.* ¶ 6; Sec. Am. Compl. at 6. In May 2007, Brown started payroll deductions once again to continue to pay off the auto loan. DSOF ¶ 6.

In 2009, Brown was laid off from the City. Sec. Am. Compl. at 7. The same year, Brown requested that the Board provide her with the total amount of contributions that she had paid to that date. *Id.* ¶ 8. The Board advised her in writing that as of December 31, 2008, Brown had accumulated $18,399.54 in annuity contributions. *Id.*, Ex. 1. On July 20, 2012, Brown formally resigned from City employment. *Id.* ¶ 9. On August 20, 2012, Brown applied to the Board for a full refund of deductions made from her salary for annuity purposes. *Id.* ¶ 10. Brown signed her application, and it was witnessed by a notary public. *Id.*

On October 2, 2012, the Credit Union reported a summary of outstanding and past-due amount on Brown's auto loan to the Board. *Id.* ¶ 14. The summary indicated that Brown had a principal balance of $5,613.47 and $273.08 in interest due in order to pay off the loan by October 7, 2012. *Id.* The loan summary also indicated that the due date on the loan was February 3, 2009, over three and a half years past due. *Id.* The Credit Union provided the Board with a copy of the Security Agreement and Power of Attorney granting the Credit Union an interest in Brown's

3

pension fund and irrevocably appointing the Credit Union as attorney to act in Brown's place to receive and collect pension fund payments. *Id.*

The Board subsequently approved Brown's refund and prepared a written earnings statement and check to reflect the total amount of contributions to be paid out. *Id.* ¶ 16. At the time, Brown's total gross contributions were $20,344.91. *Id.* On October 25, 2012, the Board distributed a $12,986.85 check to Brown. *Id.* ¶ 18. The Board withheld payment of $7,358.06 from Brown's gross contributions, $1,471.61 of which was payable to the federal government to settle Brown's income tax liability (Brown's contributions were evidently made pre-tax; she does not contend otherwise) and the remaining $5,886.45 to transfer to the Credit Union to pay Brown's outstanding debt pursuant to the Security Agreement and Power of Attorney. *Id.*

Brown commenced an action against the Credit Union and the Comptroller of the City of Chicago on April 5, 2013, alleging that the Comptroller wrongfully withheld debt payments from her paychecks in violation of Civil Rights Act of 1871, 42 U.S.C. § 1983.[4] *Id.* ¶ 23. Brown alleged that she was current in her payments to the Credit Union on both the signature loan and the auto loan. *Id.* Brown filed a Second Amended Complaint ("SAC") on October 23, 2013, naming the Municipal Employee's Annuity Benefit Fund as an additional defendant. *Id.* ¶ 25. Brown alleged that the Fund, by not accepting her proof of payments to the Credit Union, had been part of the conspiracy to violate her civil rights under § 1983. *Id.* ¶ 25.

All three defendants moved to dismiss Brown's SAC in its entirety. Dkts. 27, 29, 50. On April 16, 2014, this Court granted the motions to dismiss brought by the Credit Union and the

---

[4] The Court granted the City's motion to strike the Comptroller's Office and substitute the City as a named defendant. *See* Dkt. 17.

4

City on the grounds that Brown's claims were time-barred.[5] Mem. Granting Mot. Dismiss, Dkt. 60. This Court denied the Fund's motion to dismiss and substituted the Board of Trustees of the Fund as a defendant in lieu of the Fund.[6] *Id*. On June 13, 2014, the only remaining defendant, the Board, filed its motion for summary judgment. Mot. Summ. J., Dkt. 62.

**DISCUSSION**

Brown contends that the Board violated her due process rights under the Fourteenth Amendment by wrongfully withholding a portion of her pension when it refunded her pension contributions, and that the Board engaged in a conspiracy with the Credit Union to intentionally defraud her of her pension fund. When addressing a summary judgment motion, this Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). The movant's Rule 56.1 Statement must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Local Rule 56.1(a)(3). The non-movant must respond "to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). The non-movant may submit "any affidavits or other materials" to support his or her responses to the movant's statements, as well as any additional

---

[5] The Credit Union and the City of Chicago raised other arguments for dismissal, but the Court did not address them, as Brown's claims were so clearly time-barred.

[6] Because the Board is a local government unit under the Illinois Pension Code, 40 ILCS 5/8-192, an aggrieved plaintiff such as Brown may properly bring a § 1983 claim against the Board.

5

facts requiring denial of summary judgment. Local Rule 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c). A non-movant's failure to respond to a Local Rule 56.1 statement of fact that is supported by the record results in that fact being considered admitted. *Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Brown filed a response to the Board's summary judgment motion, Dkt. 68, but not a response to the Board's Rule 56.1 Statement of Facts.[7] Although pleadings from *pro se* litigants are liberally construed, *pro se* litigants must still comply with the Court's local procedural rules. *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (citations omitted). Accordingly, this Court will consider the Board's Rule 56.1 Statements admitted, to the extent they are supported by the record. *Raymond*, 442 F.3d at 608.

Although Brown failed to submit evidentiary materials and the Board's facts have been deemed admitted, "a nonmovant's . . . failure to comply with Local Rule 56.1, does not, of

---

[7] The Court explained Local Rule 56.1 to Brown on the record at the hearing on June 19, 2014, and specifically advised her that "if you don't respond properly to their facts, then I have to regard their facts as true and admitted and if that happens, that's not going to obviously be helpful to your case." The Court further advised Brown to seek assistance from the Court's Pro Se Assistance Office in connection with responding to the Board's summary judgment motion.

course, automatically result in summary judgment for the movant." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond*, 442 F.3d at 608). The defendant "must still demonstrate that [they] are entitled to judgment as a matter of law." *Id.* (citing *Raymond*, 442 F.3d at 608).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook,* 678 F.3d 560, 566 (7th Cir. 2012). In addressing the Board's motion, this Court construes the facts and makes all reasonable inferences in favor of the Brown, the non-moving party. *Jajeh*, 678 F.3d at 566. Once the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a verdict for the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Based on the Court's liberal reading, as required of *pro se* complaints, *see McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010), Brown has alleged that she was deprived

of property—her pension—without due process of law—notice and a hearing—and that the Board caused this deprivation. *See, e.g., Peacock v. Bd. of Trustees of Police Pension Fund,* 395 Ill. App. 3d 644, 654-55 (1st Dist. 2009) (holding that due process was violated where plaintiff received no prior notice and no meaningful opportunity to be heard before pension board terminated benefits); *Kosakowski v. Bd. of Trustees of City of Calumet City Police Pension Fund,* 389 Ill. App. 3d 381, 387 (1st Dist. 2009) ("As a matter of due process, the Board should have provided the plaintiff with notice and an opportunity to be heard before modifying his pension.").

To state a Fourteenth Amendment claim for deprivation of property without due process of law, a plaintiff must allege that "(1) [she] had a constitutionally protected property interest, (2) [she] suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). The undisputed evidence shows that Brown signed the Agreement which granted a security interest in her pension funds to the Credit Union. DSOF, Ex. 9. Although Brown's response to the motion for summary judgment asserts that she had not seen the Agreement before the motion to dismiss, Resp. at 4, she failed to rebut the Board's Statement of Facts or to provide any evidence supporting her claim. It is, therefore, undisputed that Brown executed the Agreement on May 27, 2003. Even if someone had forged Brown's signature on the Agreement, moreover, she has provided no evidence that anyone at the Board knew that the Agreement was not legitimate. The Board received the Agreement from the Credit Union; so far as the record establishes, there was no basis for anyone at the Board to know that Brown had not authorized the assignment of her pension funds to pay off her outstanding debt to the Credit Union.

Brown also appears to argue not just that the Board should not have paid any of her benefits to the Credit Union but also that it paid too much to the Credit Union. In her response to the Board's motion for summary judgment, Brown has alleged that the Board was "taking payments and overpayments from her payroll checks on the 1st and 16th and not sending that money to the Employee's Credit Union." Resp. at 4. Yet Brown has not presented any evidence to support this assertion. To oppose a motion for summary judgment, the non-moving party cannot simply rest on pleadings alone but must designate specific material facts showing there is a genuine issue for trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); *see also Celotex Corp. v. Catrettt,* 477 U.S. 317, 324 (1986). Brown has not presented any evidence of these alleged overpayments creating an issue of material fact for trial.

If Brown has a due process claim, it is not against the Board but against the Credit Union regarding her payroll deductions and principal balance calculations. The Board did not determine the amount to be deducted from Brown's pension to pay the auto loan. DSOF ¶ 14. Rather, the Credit Union informed the Board of Brown's principal balance, and the Board merely withheld that amount. *Id.* The Board had the authority to act in this capacity, pursuant to the Security Agreement and Power of Attorney and under Illinois law. The Illinois Pension Code ("Code") specifically permits an annuitant to assign her pension refunds to a credit union. A 1991 amendment to 40 ILCS 5/8-244 explicitly allows the assignment of refunds. Section 244(b) now states in relevant part:

> No annuitant, pensioner, refund applicant, or other beneficiary shall have any right to transfer or assign his annuity, refund, or disability benefit or any part thereof by way of mortgage or otherwise, except that:

> (2) in the case of refunds, a participant may pledge by assignment, power of attorney, or otherwise, as security for a loan from a legally operating credit union making loans only to participants in certain public employee pension funds described in the Illinois Pension Code, all or part of any refund which may become available to him in the event of his separation from service; . . . .

40 ILCS 5/8-244. The validity of this section has been directly upheld by the Illinois appellate court in *Wright v. Chicago Municipal Employees Credit Union,* 265 Ill. App. 3d. 1110 (1st Dist. 1994). In *Wright,* the court determined that the Code does not prevent an annuitant from assigning her annuity refund to the Credit Union, nor had the Credit Union been prohibited from taking a security interest in the annuitant's refund under the predecessor to the 1991 amendment. *Id*. at 1117-19. Similarly, in *Clark v. Chicago Municipal Employees' Credit Union,* 119 F.3d 540 (7th Cir. 1997), the Seventh Circuit adopted the Illinois appellate court's interpretation of § 244 and held that an annuitant may grant a security interest in her pension refund to a Credit Union to secure signature and auto loans. *Id*. at 545. If Brown disputes the amount that was withheld, her dispute is with the Credit Union. Brown already attempted to pursue such a claim, however, *see* SAC, but Brown's case could not proceed against the Credit Union, as it was time-barred. *See* Mem. Granting Mot. Dismiss at 3-6.

The Board has presented evidence that it withheld a portion of Brown's pension funds to fulfill the past-due amount on her auto loan with the Credit Union. Brown has not presented any evidence that this withholding violated her due process rights, nor has she presented any evidence of a conspiracy to intentionally defraud her of her pension fund. Accordingly, the Board is entitled to summary judgment. Because the Court has previously dismissed Brown's claims against the other defendants, a final Judgment Order in favor of the defendants will be entered and this case will be administratively terminated.

If the plaintiff wishes to appeal, she must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, she must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1). The plaintiff need not bring a motion to reconsider this court's ruling to preserve her appellate rights. However, if the plaintiff wishes the court to reconsider its judgment, she may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Dated: September 28, 2015

John J. Tharp, Jr.
United States District Judge